# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DEBRA STEPHENSON, )<br>)<br>    **Plaintiff,** )<br>v. )<br>)<br>DEBORAH YOUNG and SOUTHEAST )<br>KANSAS EDUCATION SERVICE CENTER )<br>INTERLOCAL NO. 609, )<br>)<br>    **Defendants,** )<br>_____) | **CIVIL ACTION**<br><br>No. 10-2197-KHV |

## MEMORANDUM AND ORDER

This matter is before the Court on <u>Defendants' Motion To Enforce Settlement Agreement</u> (Doc. #55) filed February 2, 2011. On April 28, 2011, the Court held an evidentiary hearing on defendant's motion. For reasons stated below, the Court sustains defendants' motion.

## Findings Of Fact

From August of 2007 through approximately June of 2009, plaintiff worked as a non-tenured school teacher at Southeast Kansas Education Service Center Interlocal No. 609. Deborah Young supervised plaintiff. Defendants did not renew plaintiff's teaching contract for the 2009-2010 school year. Plaintiff asserts several claims for wrongful termination.

On October 4, 2010, the parties attempted to mediate this matter before Larry Rute, an attorney and mediator. On November 23, 2010, after the parties agreed that Rute could propose a settlement, Rute submitted a mediator proposal to counsel.[1] The proposal recommended that defendants pay plaintiff $150,000 and included non-monetary terms such as a confidentiality provision. By the end of November, the Board of Directors of Southeast Kansas Education Service Center Interlocal No. 609 had discussed the mediator proposal and authorized counsel to accept the

---

[1]   Counsel for plaintiff included Patrick E. McGrath and Aaron E. Schwartz. Counsel for defendants included Michael K. Seck, Jill Waldman and Gregory P. Goheen.

proposal.[2] By the end of November, defense counsel notified Rute that defendants accepted the mediator proposal.[3]

On December 23, 2010, Patrick McGrath, co-counsel for plaintiff, notified Rute that plaintiff accepted the mediator proposal. Between December 24 and 28, 2010, Rute notified Jill Waldman, co-counsel for defendants, that plaintiff had accepted the mediator proposal. Rute asked Waldman to reaffirm that defendants had accepted the mediator proposal. On December 28, Waldman told Rute that defendants accepted the mediator proposal subject to formal Board approval but that approval was a mere formality. On December 29, Aaron Schwartz, co-counsel for plaintiff, noted in an e-mail to Waldman that "[f]rom what Larry Rute tells me, settlement has been reached and we are just waiting on board approval and your final settlement terms. Please advise if this is not your understanding." On December 30, Waldman responded to Schwartz, "yes, your understanding is correct." Rute believed that the parties had reached a settlement. Waldman had no doubt in her mind that the parties had settled the case.

On January 6, 2011, defense counsel notified Rute that the Board had approved the settlement and would formally approve it at the next board meeting on January 19, 2011.[4] On January 6, Rute notified Schwartz that the Board would approve the settlement.[5] The next day, on

---

[2] The Board understood that its insurer would pay the entire $150,000.

[3] Under the parameters of the mediator proposal, Rute did not notify plaintiff's counsel that defendants had accepted the proposal because plaintiff had not yet notified Rute that she also accepted the proposal.

[4] Michael Bodensteiner, Executive Director of Southeast Kansas Education Service Center Interlocal No. 609, informed counsel that each of the Board members agreed that the settlement would be approved at the next board meeting.

[5] Rute understood that formal board approval was a "pro forma matter" and a "mere formality" because the insurance company ultimately was providing the funds. Rute understood that the Board had already discussed the matter in November of 2010 and agreed to accept the mediator
(continued...)

January 7, McGrath called Rute and said his client would no longer accept or approve the mediator proposal. McGrath also called Waldman and stated that plaintiff had spoken to her husband and wanted to "back out" of the settlement.

## **Conclusions Of Law**

The Court has discretion to enforce or reject a settlement agreement while litigation is pending before it. United States v. Hardage, 982 F.2d 1491, 1495 (10th Cir. 1993). To resolve issues involving the formation, construction and enforceability of a settlement agreement, the Court applies state contract law. See United States v. McCall, 235 F.3d 1211, 1215 (10th Cir. 2005). The parties do not dispute that Kansas law applies in this matter.[6]

Whether a contract was formed is a question of fact. Reznik v. McKee, 216 Kan. 659, 671-72, 534 P.2d 243, 254 (1975). To form a binding contract, the parties must reach a meeting of the minds on all essential terms. Albers v. Nelson, 248 Kan. 575, 580, 809 P.2d 1194, 1198 (1991); see Sidwell Oil & Gas Co., Inc. v. Loyd, 230 Kan. 77, 79, 630 P.2d 1107, 1110 (1981). To constitute a meeting of the minds, the parties must have a fair understanding which normally accompanies mutual consent and the evidence must show with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon the terms of the contract. Steele v. Harrison, 220 Kan. 422, 428, 552 P.2d 957, 962 (1976).

The law favors the compromise and settlement of disputes. Krantz v. Univ. of Kan., 271

---

[5](...continued)
proposal.

[6] Because this is a diversity action, the Court applies Kansas choice of law rules. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). Under Kansas choice of law rules, "[t]he law of the forum applies unless it is expressly shown that a different law governs, and in case of doubt, the law of the forum is preferred." Phil. Am. Life Ins. v. Raytheon Aircraft Co., 252 F. Supp.2d 1138, 1142 (D. Kan. 2003). Both parties assume that Kansas law applies. In addition, for purposes of defendants' motion, the Court discerns no material difference between Kansas law and general principles of contract law. Accordingly, the Court applies Kansas law.

Kan. 234, 241-242, 21 P.3d 561, 567 (2001); Lewis v. Gilbert, 14 Kan. App.2d 201, 203, 785 P.2d 1367, 1368 (1990). Absent fraud or bad faith, neither party to an agreement is permitted to repudiate it. See Krantz, 271 Kan. at 241-42, 21 P.3d at 567; see also Lewis, 14 Kan. App.2d at 203, 785 P.2d at 1368 (party's change of mind does not amount to allegations of fraud or bad faith); Woods v. Denver Dep't of Revenue, Treasury Div., 45 F.3d 377, 378 (10th Cir. 1995) (party who knowingly and voluntarily enters settlement ordinarily cannot avoid settlement simply because she changes her mind). Settlement agreements need not be in writing to be enforceable under Kansas law. Lewis, 14 Kan. App.2d at 203-04, 785 P.2d at 1368-69; see Dougan v. Rossville Drainage Dist., 270 Kan. 468, 487-88, 15 P.3d 338, 352 (2000) (oral settlement agreement enforceable if parties have meeting of minds on essential terms and intend to be bound); Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 322 (2d Cir. 1997) (fact that parties contemplate later memorializing agreement in executed document will not prevent them from being bound by oral agreement) (applying New York and federal common law); Fulgence v. J. Ray McDermott & Co., 662 F.2d 1207, 1209 (5th Cir. 1981) (party who orally authorized settlement bound by agreement even if she changes her mind when presented with settlement documents); Connor v. Hammer, 201 Kan. 22, 24-25, 439 P.2d 116, 118-19 (1968) (plaintiff could not repudiate oral settlement after attorney confirmed settlement by letter). Contracting parties may intend to be bound by their oral expressions and consider other outstanding matters as nonessential:

> Certain matters may be expressly left to be agreed upon in the future, [and those matters] may not be regarded by the parties as essential to their present agreement. Such an expectation will not prevent an agreement already made from being an enforceable contract. This may be true even though they expressly provide in their agreement that new matters, when agreed upon, shall be incorporated into their agreement and all shall be reduced to a formal written document or documents later. The fact that the parties contemplate the subsequent execution of a formal instrument as evidence of their agreement does not necessarily imply they have not already bound themselves to a definite and enforceable contract.

Phillips & Easton Supply Co. v. Eleanor Int'l, Inc., 212 Kan. 730, 735, 512 P.2d 379, 384 (1973)

(citations omitted). Compare Weil & Assocs. v. Urban Renewal Agency, 206 Kan. 405, Syl. ¶ 6, 479 P.2d 875 (1971) (where intent of parties is clear that they are negotiating with definite understanding that contract terms are not fully agreed upon and written agreement is contemplated, and no valid, enforceable contract is to exist until the execution of such an agreement, a binding contract does not come into existence in the absence of such execution). Whether the parties intended their oral agreement to be immediately effective or only to become binding on the execution of the writing is a question of fact to be resolved by the trial court. McKeon v. Giusto, 280 P.2d 782, 785 (Cal. 1955).

Plaintiff contends that the parties only reached an agreement subject to formal Board approval so that she had an unqualified right to withdraw from the agreement before formal Board approval on January 19. An understanding that an agreement is subject to approval by a governing board or similar body does not necessarily make the agreement illusory. A condition precedent is something that is agreed must happen or be performed before a right can occur to enforce the main contract. Weinzirl v. Wells Group, Inc., 234 Kan. 1016, 1020, 677 P.2d 1004, 1008 (1984). A condition of board approval may be construed either as (1) a condition precedent to the initial formation of the contract or (2) a condition precedent to an obligation to perform under an existing contract. M West, Inc. v. Oak Park Mall, L.L.C., 44 Kan. App.2d 35, 47, 234 P.3d 833, 843 (2010); Castroville Airport, Inc. v. City of Castroville, 974 S.W.2d 207, 210 (Tex. App. 1998). In the first instance, no contract is formed because the negotiating parties intend that their agreement will take effect only when and if it is approved by a governing board or entity. See Jacobs v. Freeman, 163 Cal. Rptr. 680, 686-87 (Cal. App. 5th Dist. 1980); see also M West, 44 Kan. App.2d at 47, 234 P.3d at 843 (parties may agree to condition precedent to formation of contract). In the latter instance, however, a condition of board approval does not give either party an absolute right to escape its obligations under the agreement because the reserving party has an implied obligation to carry out

-5-

the objectives of the contract in good faith including submitting the agreement to its board for approval. Jacobs, 163 Cal. Rptr. at 687; see Frankel v. Bd. of Dental Examiners, 54 Cal.Rptr.2d 128, 130-31 (Cal. App. 3d Dist. 1996) (potential lack of approval of settlement agreement by governing board by itself will not preclude parties from entering presently binding and effective contract); see also M West, 44 Kan. App.2d at 47, 234 P.3d at 843 (parties may agree to condition precedent to performance under an existing contract). If reasonably possible, courts treat a condition of board approval as an enforceable obligation which the reserving party must act in good faith to satisfy.[7]

Here, plaintiff does not allege fraud or bad faith. Instead, plaintiff asserts that defendants never formally accepted her offer before she withdrew it on January 7, 2011. Plaintiff's present position is at odds with the expressed positions of the mediator, three defense counsel and even one of her own attorneys, who all believed that at least by December 30, 2010, the parties had reached an oral settlement agreement. Based on the entire record, including the testimony of the mediator, the Court concludes that at least by December 30, 2010, the parties entered a binding oral agreement to settle the case. The agreement included a condition precedent that the Board must approve the agreement, but that condition did not preclude formation of a binding contract. See Wallerius v. Hare, 200 Kan. 578, Syl. ¶ 1, 438 P.2d 65 (1968) (when parties agree on essential terms and accept

---

[7] See M West, 44 Kan. App.2d at 47, 234 P.3d at 843 (most conditions precedent are conditions precedent to performance under existing contract rather than conditions precedent to formation of contract); Oppenheimer & Co. v. Oppenheim, 660 N.E.2d 415, 418 (N.Y. 1995) (most conditions precedent describe acts or events which must occur before party is obliged to perform promise made pursuant to existing contract as distinguished from a condition precedent to formation of contract); W. Commerce Bank v. Gillespie, 775 P.2d 737, 739 (N.M. 1989) (condition precedent generally is event occurring after formation of valid contract); 13 Williston on Contracts, § 38:4, p. 381 (4th ed. 2000) (fact that no duty of performance on either side can arise until happening of condition does not make validity of contract depend upon its happening); see generally Third Story Music, Inc. v. Waits, 48 Cal. Rptr.2d 747, 751 (Cal. App. 2d Dist. 1995) (where negotiating parties appear to have intended complete agreement, courts will avoid construction rendering that agreement illusory if alternative construction reasonable).

condition precedent to requiring performance, condition precedent becomes part of main contract and agreement is consummated); M West, 44 Kan. App.2d at 47, 234 P.3d at 843 (condition precedent in agreement does not stymie formation of contract, but rather becomes part of contract itself). Instead, defendants had an implied obligation to carry out the objectives of the oral agreement in good faith by submitting the settlement agreement for formal Board approval. Under the oral agreement, plaintiff had no right to back out of the deal before the Board had an opportunity to formally approve the agreement. The Board ultimately approved the mediator proposal and the condition precedent was satisfied. The Court therefore sustains defendants' motion to enforce the settlement agreement.[8] The parties are directed to consult with the mediator as to any necessary documentation of the oral settlement agreement.

**IT IS THEREFORE ORDERED** that Defendants' Motion To Enforce Settlement Agreement (Doc. #55) filed February 2, 2011 be and hereby is **SUSTAINED**.

Dated this 26th day of May, 2011 at Kansas City, Kansas.

> s/ Kathryn H. Vratil
> KATHRYN H. VRATIL
> United States District Judge

---

[8] The Court overrules defendants' request for fees and expenses in filing the motion to enforce. Although plaintiff did not cite any authority for her position that she had a right to back out of the agreement, her position had legal support under Kansas law depending on the type of oral agreement.